UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-10439-RWZ

ANDRE T. RIDLEY
Appellant

v.

CAROLYN BANKOWSKI, ET AL.
Appellee

THE CITY OF BOSTON
Intervenor

ORDER

November 21, 2011

ZOBEL, D.J.

## I. Introduction

Appellant-debtor, Andre T. Ridley ("Ridley"), who at one time was the pastor of the Church of Good News, Inc. (the "Church"), appeals from a February 23, 2011, bankruptcy court order overruling his objection to a proof of claim filed by the City of Boston (the "City"), intervenor, claiming $32,332.40 for a raze fee plus interest and allowing the City's claim. The fee accrued as a result of the 1998 demolition of a vandalized structure located on a property, then owned by the Church, and now owned by Ridley. Based on principles of collateral estoppel, appellant asserts that the bankruptcy court erred because it had previously ruled, in a 2001 order and memorandum, that these sums were exempt from collection under Mass. G. L. c. 59 § 5

cl. 11 due to the religious use of the properties. Appellant also asserts that the City, which opposed the Church's religious exemption claims in 1999, is now barred on res judicata grounds from raising new legal arguments and/or claims for the raze fee that were available to it at the time of the earlier action.

## II. Background

In 1998, the Church filed for bankruptcy protection under Chapter 11. (Record Appendix at 054, herein "R.".) In November 1999, the Church and the U.S. Bankruptcy Trustee filed a "Motion to Determine Tax Liability" (the "Church's 1999 Motion"), in which the Church requested entry of an order "determining the Debtor's tax liability with respect to its real property, including the land and all improvements, located in the City of Boston." (R. at 047.) The Church argued that "real estate owned by or held in trust for religious purposes is exempt" from local property tax in Massachusetts and that the dominant or intended use of the properties at issue was for religious purposes. (R. at 048.) The City opposed the motion on the ground that the Church conducted taxable activities or no activities at all on the properties and therefore was not entitled to the exemption. (R. at 072.)

After a hearing on October 13, 2001, the bankruptcy court issued an order and memorandum of decision on the narrow issue of "whether the Church has used its three properties for religious purposes in a manner that would qualify it for exemption under Mass. Gen. Laws Ch. 59, § 5, cl. 10 and cl. 11 (West 1988)."[1] (R. at 51.) Indeed,

---

[1] Of the three properties addressed in the court's decision, only 48 Amory Street, Boston, Massachusetts, is relevant to this appeal.

2

the parties expressly stipulated that the "sole issue to be determined" by the court was "whether or not [the properties] . . . . were used by the taxpayer in a manner which would qualify it to be exempt under the provisions and interpretations of [Mass. G. L. c. 59 § 5 cl. 11]" (R. at 062). The bankruptcy court, by Judge Feeney, found that the Church had carried its burden of establishing that the Church used or intended to use the properties it owned for religious purposes (R. at 077.) and concluded that the "Debtor is entitled to an exemption from real estate taxes for … 48 Amory Street" for the years up to but not including 2001. (R. at 080.)

Several years later, on August 2, 2004, the Church and the City submitted a joint motion for clarification requesting that the court clarify whether the raze fee should have been exempted as a "real estate tax" under the court's 2001 order.[2] (R. at 111.) The bankruptcy court denied the parties' joint motion on the grounds that "the case is closed and has not been reopened." (R. at 110.) Neither party further pursued the matter.

On October 7, 2009, Ridley filed a voluntary personal Chapter 13 bankruptcy petition, also drawn to Judge Feeney, in which he listed an ownership interest in 48 Amory Street. He had acquired the property one day earlier by quitclaim deed from the Church. (R. at 038.) The City intervened in Ridley's individual Chapter 13 proceeding and filed a secured proof of claim in the amount of $66,166.97 which included the 1998

---

[2] The record is unclear as to what attempts, if any, the City made to collect the raze fee after its December 2001 letter but before the parties' August 2004 joint motion for clarification. The City notes that at all times the City's lien for the raze charges was still of record with the Suffolk County Registry of Deeds. (City's Appellate Brief at 15.)

3

raze fee.[3] (R. at 036.) Appellant objected to the City's proof of claim asserting that "the doctrine of res judicata/collateral estoppel bars the City of Boston from attempting to claim that Ridley owes delinquent property taxes for the years 1972 through 2000 . . . [because] res judicata . . . precludes the parties and their privies from relitigating issues that were or could have been raised in [the 2001] action." (R. at 166.) Appellant also considered the raze fee to have been specifically exempted by the court's 2001 opinion. (R. at 280, 288.) The City responded that the delinquent raze charges may still be committed as a tax even though 48 Amory Street was, per the 2001 order, exempted from real estate taxes, because Mass. G. L. c. 139 § 3A permits such charges to be committed as a tax notwithstanding the tax exempt status of the subject parcel. (R. at 174.)

The bankruptcy court, in its decision of February 23, 2011, stated that its October 13, 2001 order "neither addressed nor determined whether the Church was liable . . . for demolishing the building located at 48 Amory Street" and held that collateral estoppel did not apply because the Church's liability for the raze charges was "not actually litigated" and that res judicata did not apply because there was no "valid and final judgment on the merits with respect to the City's claim for … building raze charges." (R. at 041, 043.) The court noted that "indeed, the parties recognized the absence of such a determination because… they filed [a motion for clarification]." Id.

On the merits, the court determined that while the collection of raze fees may be

---

[3] The City filed two proofs of claim, for the exact same sum, one was filed January 6, 2009, and the other on April 23, 2009. These two proofs of claim do not differ in any material way with respect to the raze fee.

4

facilitated by committing them "as the tax" for collection purposes, "the manner in which a governmental unit collects the costs associated with the consumption of resources or the use of services though a commitment to the [tax] collector does not transmute the charges into a tax" subject to the religious exemption under Mass. G. L. c. 59 § 5 cl. 11. (R. at 045.) Accordingly, it found Ridley was found liable for the building raze fee plus interest in the amount of $32,223.40. (R. at 046.)

### III. Standard

"On intermediate appeal to a district court, a final order of the bankruptcy court is subject to the same [ ] standards of review normally employed in direct appeals to the courts of appeals in civil cases generally. The district court accepts all bankruptcy court findings of fact unless clearly erroneous, but reviews rulings of law de novo." In re LaRoche, 969 F.2d 1299, 1301 (1st Cir. 1992) (internal citations and quotations omitted).

### IV. Analysis

Issue preclusion, sometimes referred to as collateral estoppel, and claim preclusion, sometimes referred to as "res judicata,"[4] while related in the sense that each serves to preclude wasteful re-litigation between parties, are nonetheless separate and distinct legal doctrines, with two separate and distinct legal standards and

---

[4] See e.g., Cooper v. Federal Reserve Bank of Richmond, 467 U.S. 867, 874 (1984) ("Basic principles of res judicata (merger and bar or claim preclusion) and collateral estoppel (issue preclusion) apply.")

preclusive effects.[5] Issue preclusion holds that a court's final decision on an issue actually litigated is conclusive on that issue in subsequent law suits, while claim preclusion serves to prevent parties from raising a claim that has been previously adjudicated or that could have been raised in the prior litigation. Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 326 n.5 (1979); In re Milliren, 387 B.R. 72, 75 (1st Cir. BAP 2008); Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 30 (1st Cir. 1994); Airframe Systems, Inc. v. Raytheon Co., 520 F.Supp.2d 258, 264 (D. Mass. 2007).

The bankruptcy court dismissed both appellant's issue preclusion and claim preclusion arguments in its 2011 opinion. The issue on appeal is whether the bankruptcy court erred in ruling that: (1) its 2001 decision did not determine whether the raze fee was exempted from taxation under Mass. G. L. c. 59 § 5 cl. 11's religious use provision and (2) res judicata was inapplicable. Although appellant specially certifies only the first issue for appeal, his brief can be fairly read to argue the second point, which was also argued below (R. at 166.) and addressed by the bankruptcy court (R. at 043.). I will follow suit.

**A. Issue Preclusion**

Issue preclusion requires the party asserting it to establish four elements, that: (1) the issue sought to be precluded is the same as that involved in the prior action; (2) the issue must have been actually litigated; (3) the issue was determined by a valid and binding final judgment; and (4) the determination of the issue was essential to the

---

[5] See Apparel Art Intern., Inc. v. Amertex Enterprises Ltd., 48 F.3d 576, 583 n. 9 (1st Cir. 1995) ("Res judicata is sometimes referred to as claim preclusion. The doctrine of collateral estoppel, or issue preclusion, is related but distinct.")

judgment. Grella, 42 F.3d at 30 (internal quotations and citations omitted).

The parties in this case and the court were in total agreement in 2001 that the only issue to be tried was "whether or not [the properties] … were used by the taxpayer in a manner which would qualify it to be exempt under the provisions and interpretations of [Mass. G. L. c. 59 § 5 cl. 11]." (R. at 062). Accordingly, the only issue the bankruptcy court decided was whether three properties owned by the Church were used for religious purposes. (R. at 055 and 062.)

In its 2001 decision, the bankruptcy court did note "According to the City, the Church owes $74,788.49 in delinquent real estate taxes, of which $33,185.78 is attributable to interest and $15,999.00 is attributable to the cost of demolishing the building." However, it did not further discuss this fee, and it is clear from the quoted language, the court merely identified the City's description of the amounts owed; it did not determine the issue. The record is also clear that neither party raised or briefed the legal merits of any exemption of the raze fee under Mass. G. L. c. 59 § 5 cl. 11 or the Church's liability therefore under Mass. G. L. c. 139 § 3A. Its passing reference to the raze fee simply does not establish that the court actually determined that it was exempted from collection by virtue of the properties' religious use. "[A] judicial decision is only authority for the issues that it actually decides, and questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided." Wiess v. Wal-Mart Stores Inc., No. 10-111-GPM, 2010 WL 1948187, at *3 (S. D. Ill. May 13, 2010).

Furthermore, Judge Feeney's 2011 determination that her 2001 order did not,

7

and was not intended to, address whether the Church was liable for the raze fee is entitled to deference by a reviewing court. See Monarch Life Ins. Co. v. Ropes & Gray, 65 F.3d 973, 938 (1st Cir. 1995) (noting deference to bankruptcy court is appropriate in preclusion cases where "bankruptcy court [ ] was interpreting its own order. . ." and reasoning "bankruptcy court was directly engaged in the give-and-take of the [ ] proceedings and had the better vantage point for determining whether the parties had been fairly apprised of the [ ] issue.")

Finally, appellant contends that although the 2001 decision may not have directly addressed the raze fee, the issue was still decided for preclusion purposes because it was "logically or practically, a necessary component of the decision reached in the prior litigation." Stoehr v. Mohamed, 244 F.3d 206, 208 (1st Cir. 2001). Here, any decision about the proper treatment of the raze fee was wholly irrelevant and unnecessary to the determination of the property's religious use.

For these reasons, I agree the bankruptcy court is correct that issue preclusion is not available here.

### B. Claim Preclusion

A party seeking to bar an action on the basis of claim preclusion must establish "(1) a final judgment on the merits in an earlier action; (2) an identity of parties or privies in the two suits; and (3) an identity of the cause of action in both suits." Aunyx Corp. v. Canon U.S.A., Inc., 978 F.2d 3, 6 (1st Cir. 1992), cert. denied, 507 U.S. 973 (1993). I turn to these requirements ad seriatum.

### 1. Final Judgment on the Merits

Although the bankruptcy court is correct that there was no final judgment on the merits on the precise issue of the building raze fee (R. at 050), that is not dispositive of the claim preclusion determination. Claim preclusion "does not require a final judgment on the merits as to every specific claim to be barred. Rather, so long as the previous action concluded with a final judgment on the merits, [claim preclusion] extends to bar the re-litigation of any issue that was, or might have been, raised in respect to the subject matter of the prior litigation." Sutliffe v. Epping School Dist., 584 F.3d 314, 328 (1st Cir. 2009). Thus, the relevant inquiry, here, is whether there was a final and binding judgment on the Church's 1999 Motion; an issue which the City conceded below and therefore I need not address further.[6]

### 2. Identities of the Parties / Privity of the Parties

The creditor/intervenor, the City of Boston, is the same in both actions, and the debtors have privity via successive interests in 48 Amory Street. Mantz v. Wells Fargo Bank, N.A., No. 09-12010 2011 -JLT, WL 196915, at *3 (D. Mass. Jan. 19, 2011) ("The requirement of privity is met if the party asserting [claim preclusion] has succeeded to the interest in the property of a party that prevailed in a prior action.")

### 3. Identity of the Cause of Actions in Both Suits

---

[6] Before the bankruptcy court, the City originally conceded that the 2001 bankruptcy court order was a final judgment on the merits. (R. 209.) However, the City has changed horses and is now arguing there was "no final judgment on the merits" for preclusion purposes because the underlying Chapter 11 bankruptcy itself was dismissed on a motion from another creditor and such a dismissal is not a final judgment on the merits. District courts sitting in appellate review of a bankruptcy court determination typically do not consider new arguments raised for the first time on appeal, especially when the party has taken a contrary position in the original action. See Wallace Motor Sales, Inc. v. American Motor Sales Corp., 780 F.2d 1049, 1067 (1st Cir.1985) ("It is by now axiomatic that an issue not presented to the trial court cannot be raised for the first time on appeal.")

The next question is whether the City's claims in Ridley's 2009 Chapter 13 bankruptcy are sufficiently related to the claims raised by the City in the Church's 1999 Chapter 11 preceding. The answer to this depends on "whether [the new claim] arose from the same transaction, or series of connected transactions, out of which the prior action arose." Herman v. Meiselman, 541 F.3d 59, 62 (1st Cir. 2008). "Although a set of facts may give rise to multiple counts based on different legal theories, if the facts form a common nucleus that is identifiable as a transaction or series of related transactions, then those facts represent one cause of action." Id.

"Facts forming a common nucleus are those meeting the following criteria: 1) whether the facts are related in time, space, origin or motivation; 2) whether the facts form a convenient trial unit; and 3) whether treating the facts as a unit conforms to the parties' expectations." Id. at 62 - 63.

Here, the first two Herman factors are met. The precise amount of the raze fee and the circumstances of the demolition were related in time and presented in the original action. Similarly, raising the two claims together would have formed a convenient trial unit; the bankruptcy court would have needed to conduct little to no additional fact finding because the issue of how the fee should be treated is a matter of law and much, if not all, of the necessary factual background was already before the court.

The remaining factor is whether treating the facts as a unit, for purposes of claim preclusion, conforms to the parties' expectations. On this prong, preclusion must fail.

The 2004 motion for clarification was a joint motion filed by both parties–

indicating that the Church could not have possibly had an expectation that the 2001 order addressed the raze fee. Had the Church actually held such a belief they would not have joined in the motion.

Moreover, the parties, as evidenced by their stipulation, clearly did not expect the court to determine whether the raze fee was exempted from collection because they expressly asked the court to decide only one issue– whether the properties were used for religious purposes. This stipulation, far from providing a factual basis for preclusion, is consistent with an intent by the parties to preserve the raze fee issue, and any other issue that was not explicitly before the court in the earlier action, for later adjudication.

In addition, in claim preclusion cases typically the party that is precluded from bringing a later claim is the party that had the obligation or logical incentive to bring the earlier claim or raise the earlier argument. See e.g., In re Burrell-Richardson, 356 B.R. 797, 801 (1st Cir. BAP 2006) ("claim preclusion doctrine ... is based on the idea that the party to be precluded has had an incentive and opportunity to litigate the matter in the first lawsuit."); Lupo v. Voinovich, 858 F.Supp. 699, 706 (S. D. Ohio 1994) (claim preclusion ... depends upon whether [Plaintiff] had both the opportunity and the obligation to raise [claim].") Here, the City was a respondent-creditor to the Church's motion to determine its tax liability in 1999 and was later an intervenor-creditor in Ridley's 2009 personal bankruptcy. Although either party could have raised the issue in 1999 of whether the raze fee should be exempted by virtue of the property's religious use, neither party did. I am not persuaded that the City had a greater obligation to argue that the raze fee was not exempted than did the Church to argue that the raze

fee was exempted.

The statutory language of Mass. G. L. c. 139 § 3A supports the City's non-action. The statute states when a demolition fee is owed and "committed" to the tax collector even "[i]f the property to which such debt relates is tax exempt, such debt shall be committed as the tax." The bankruptcy court noted as much in its 2011 decision. (R. at 044.) For this reason, the City had no incentive to raise the issue.[7]

Accordingly, it is inconsistent with the parties' expectations that the issue of the raze fee liability be treated jointly with the issue of religious use of the properties. Thus, there is insufficient identity between the cause of actions for claim preclusion to apply.

### C. Interest Assessment

Appellant requests in the event I affirm the bankruptcy court's decision that I "address the correctness of the amount of the interest charged by the City with respect to this fee." (Docket # 23 at 26.)

This is a matter left unresolved by the bankruptcy court because appellant filed his notice of appeal before the City, in response to the bankruptcy court's order for an accounting (R. at 046.), submitted justification for its figures.

### V. Conclusion

---

[7] See Otherson v. INS, 711 F.2d 267, 273 (D. C. Cir. 1983) (". . . preclusion in the second trial must not work an unfairness. Preclusion is sometimes unfair if the party to be bound lacked an incentive to litigate in the first trial, especially in comparison to the stakes of the second trial.") See Yamaha Corp. of America v. U.S., 961 F.2d 245, 254 (D. C. Cir. 1992) (holding that issue preclusion would be unfair if applied against "party [that] clearly lacked any incentive to litigate the point in the first trial"); See also Kremer v. Chemical Const. Corp., 456 U.S. 461, 481 n. 22 (1982) (explaining that the unfairness concerns underlying issue preclusion doctrine apply equally in the case of claim preclusion).

The bankruptcy court's overruling appellant's objection to the amended proof of claim by the City of Boston is AFFIRMED. However, the case is remanded to the bankruptcy court for resolution of the interest charges. Judgment may be entered accordingly.

    November 21, 2011                          /s/Rya W. Zobel
        DATE                                  RYA W. ZOBEL
                                                UNITED STATES DISTRICT JUDGE